NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0675n.06

Case No. 16-6492

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 05, 2017
DEBORAH S. HUNT, Clerk

DONALD NICHOLS,                                  )
                                                 )
        Plaintiff-Appellee,                      )
                                                 )        ON APPEAL FROM THE UNITED
v.                                               )        STATES DISTRICT COURT FOR
                                                 )        THE EASTERN DISTRICT OF
KNOX COUNTY, TENNESSEE,                           )        TENNESSEE
                                                 )
        Defendant-Appellant.                     )

BEFORE:  GIBBONS, COOK, and THAPAR, Circuit Judges.

COOK, Circuit Judge.  Donald Nichols broke his neck while incarcerated at the Knox County Detention Facility ("the Facility").  Despite Nichols's requests for medical attention, the nurses and staff at the Facility failed to order x-rays or properly treat his neck injury for seventy days.  Nichols sued Knox County ("the County") and several of its employees under 42 U.S.C. § 1983 for failing to diagnose and treat his injury correctly.  Nichols settled the claims against the individual defendants, including Nurse Amy Luxford, before trial.  The County admitted liability for violating his constitutional rights, and, following a trial for damages, a jury awarded Nichols $140,000.  The County now appeals.  For the reasons explained below, we AFFIRM.

## I. BACKGROUND

While incarcerated at the Facility, Nichols fell off his bunk and broke his neck.  Although Nichols repeatedly sought medical attention, he first received x-rays seventy days after the fall, prompting a broken-neck diagnosis.

Nichols initiated three suits as a result of his injuries. He sued the County and several employees in federal court alleging deliberate indifference to his serious medical needs in violation of § 1983. He also brought two cases in Tennessee state court: one for negligence in assigning him to a top bunk, and the other (not relevant here) for medical malpractice. The Tennessee court granted the County summary judgment on the negligence claim and that judgment withstood appeal. *See Nichols v. Knox Cty.*, No. E2014-01566-COA-R3-CV, 2015 WL 6661485, at *1 (Tenn. Ct. App. Nov. 2, 2015).

This § 1983 action targets Knox County as well as individual County nurses and staff who interacted with Nichols during the diagnosis delay. The district court granted summary judgment to several nurses but cited material issues of fact in denying judgment to the County and Nurses Luxford, Allen, and Jones. While the parties appealed the summary judgment, the court stayed the matter. During the stay, Nichols settled his claims against all remaining defendants except for the County.

Nurse Luxford paid $187,500 to settle the individual- and official-capacity claims against her. After that settlement, the County moved to amend its answer to assert that Nichols's release of his official-capacity claims against Nurse Luxford also served to release the County. Additionally, the County moved to include a res judicata defense based on the Tennessee court's dismissal of the negligence case. Assessing both motions to be futile, the district court denied them and lifted the stay.

After Nichols filed an amended complaint in 2016, the County admitted liability under § 1983, subject to its affirmative defenses, "for any damages which were proximately caused and

in fact caused by the delay of its nurses in obtaining a diagnosis of Plaintiff's neck injury between August 27, 2010 and November 5, 2010." With the County's consent, the district court entered summary judgment declaring Knox County liable to Nichols "under § 1983 for physical and mental pain and suffering, mental anguish, and loss of dignity suffered as a result of the 70-day delay in diagnosing his injury." Considering damages only, the jury awarded Nichols $140,000 and the court entered judgment. The County appeals raising four issues. We address each in turn.

## II. DISCUSSION

### A. Nurse Luxford's Settlement Left the *Monell* Claims Pending

The County maintains that the settlement dismissing the official-capacity claims against Nurse Luxford also served to dismiss the claims against Knox County and, therefore, no case or controversy remained. Two documents evidenced Nichols's settlement with Nurse Luxford—the stipulation of dismissal filed with the court and their settlement agreement. Neither document's plain language discharges Nichols's separate claims against the County. The stipulation reads:

> COME NOW the parties, by and through counsel, and stipulate to the court that all matters and controversies between them have been resolved and that Defendant Luxford, in her individual and official capacity should be dismissed with prejudice. The parties further stipulate that each shall bear its own discretionary costs, attorney's fees, and expenses.

Similarly, the settlement, which defined "Amy Luxford, R.N.," as the "Defendant," states:

> Plaintiff hereby completely releases from all liability and fully and completely forever discharge[s] Defendant from any and all past, present or future claims, demands, obligations, present and future actions, causes of action, claims for

> relief, wrongful death claims, rights, damages, costs, losses of services, attorney's fees, expenses and compensation of any nature whatsoever . . . .

It further states that concurrent with the settlement payment Nichols will dismiss "Defendant Amy Luxford, individually and in her official capacity."

Despite this evidence that the settlement with Nurse Luxford affected only the claims against her, the County argues that because the stipulation resolved "all matters and controversies" between Nurse Luxford and Nichols, no other liability remained. As Nichols counters, however, his § 1983 claims targeted the County's own missteps in running the jail for which it alone may be held responsible.

A municipality cannot be liable under § 1983 on a respondeat superior theory, but may be liable "when execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). Furthermore, the release of an official-capacity claim against an individual does not extinguish separate claims for liability against a municipality. *See, e.g.*, *Moldowan v. City of Warren*, 578 F.3d 351, 392–94 (6th Cir. 2009) (dismissing claims against a police officer sued in his individual and official capacities, but finding that a city could be liable for separate claims); *Gregory v. City of Louisville*, 444 F.3d 725, 760–61 (6th Cir. 2006) (affirming summary judgment for individual defendants sued in their individual and official capacities, but finding that the city could be liable for *Monell* claims).

Nichols's amended complaint included separate claims against the County for municipal liability based on the County's "own policies, customs, and practices or lack thereof in this instance." These policies and customs were the moving force behind his claims for deliberate

4

indifference to his serious medical needs. Nurse Luxford's settlement did not resolve the separate *Monell* claims.

**B. The County's Right to Setoff and the Exclusion of Evidence of Nurse Luxford's Settlement**

**1. Right to Setoff**

Knox County argues that Nurse Luxford's settlement should be set off against the jury's award. In other words, given that Nichols recovered $187,500 from Nurse Luxford, that amount, the County maintains, more than satisfies the $140,000 the jury thought his injury was worth.

The County analyzes the legal situation as Nichols suffering a single injury—the broken neck—for which he should receive just one recovery. A court may set off a damages award against a settlement when the settling and non-settling parties are liable for the same injury. *See Dobson v. Camden*, 725 F.2d 1003, 1005 (5th Cir. 1984) (en banc) (holding setoff inapplicable absent "joint liability . . . for the particular injuries for which [plaintiff] recovered"). And although § 1983 defendants may be jointly liable, they are not when, like here, "the injury is divisible and the causation of each part can be separately assigned to each tortfeasor." *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993) (quoting *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n.8 (1979)).

Nichols's complaint targeted the County for injuries resulting from its customs and policies (such as training or supervision shortcomings) for which Nurse Luxford could not be liable. Importantly, after Nurse Luxford's settlement, Nichols and the County in effect acknowledged that the County's liability differed from the liability Nichols just settled with

Nurse Luxford. They signed a joint stipulation that outlined to the jury what injuries to consider in its verdict. That is, the County, subject to its affirmative defenses, admitted liability "under 42 U.S.C. [§] 1983 for physical and mental pain and suffering, mental anguish and loss of dignity that [Nichols] suffered as a result of the 70-day delay in diagnosing his neck injury." Nichols correspondingly agreed to limit his claims and evidence at trial. The court instructed the jury consistent with the parties' stipulation that the County had admitted liability and directed the jury to determine the damages Nichols "sustained as a direct result of Knox County's delay in diagnosing his injury." The County sought no instruction regarding the scope of its *Monell* liability and, in stipulating as it did, provided the jury with no opportunity to evaluate Nurse Luxford's liability. Given how the parties framed the damages issue, the County cannot set off the jury award against a settlement related to a claim that the jury never considered—especially where, as here, Nurse Luxford expressly denied liability in her settlement. *See Restivo v. Hessemann*, 846 F.3d 547, 583 (2d Cir. 2017) ("[N]o federal caselaw suggests that setoff is appropriate where a settling party's liability is never considered at trial by a jury . . . .").

## 2. Exclusion of Nurse Luxford's Settlement

In response to the County's demand that the jury be informed about Nichols's settlement with Nurse Luxford, the court decided that because comparative fault was unavailable under federal law, the County provided no basis for the court to admit that evidence.[1] As the district

---

[1] Relying primarily on *McHugh v. Olympia Entertainment, Inc.*, 37 F. App'x 730 (6th Cir. 2002), the district court held that the County had no right to setoff because comparative

court stated, "Knox County will be assessed whatever damages this jury wants to assess against them separate and apart from the settlement with the nurses." Because the jury's task was to determine how much the County should pay for its own liability, we assess the court's call to be within its discretion.

## C. Jury Instructions and Evidentiary Rulings

### 1. Jury Instructions

Knox County objects to the jury instructions because they failed to separate the pain and suffering caused by the seventy-day delay from the pain and suffering resulting from the neck fracture itself. This court reviews the legal accuracy of jury instructions de novo and the denial of proposed jury instructions for abuse of discretion. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 305 (6th Cir. 2011) (citations omitted).

The County proposed the following instruction meant to limit Nichols's recovery to "additional" injuries:

> The Court has concluded that Knox County is not responsible for Mr. Nichols' fall during his sleep. As a result, Mr. Nichols is not entitled to recover damages for the neck injury sustained in his fall. Mr. Nichols' claim in this case is limited to damages for any *additional* physical and mental pain and suffering, mental anguish, and loss of dignity he suffered as a result of the 70-day delay in diagnosing his injury.

The district court denied the County's proposed jury instructions as inconsistent with the County's liability: "[T]he jury is here to determine what damages he sustained as a result of not

---

negligence does not apply to § 1983 claims. But the court misreads *McHugh*: that case discusses comparative negligence, not setoffs, and therefore fails to resolve the issue here. *See id.* at 736.

being diagnosed for that 70 days. Now, that's not additional." Instead, the court instructed the jury as follows:

> Since Knox County has admitted liability to the plaintiff under § 1983 for physical and mental pain and suffering, mental anguish, and loss of dignity suffered as a result of the 70-day delay in diagnosing his injury, you must award Mr. Nichols such sum as you find from the preponderance of the evidence will fairly and justly compensate Mr. Nichols for damages you find Mr. Nichols sustained as a direct result of Knox County's delay in diagnosing his injury. You should consider the following elements of damages:
>
> 1. Mr. Nichols's physical pain and suffering,
> 2. His mental pain and suffering,
> 3. His mental anguish, and
> 4. His loss of dignity.
>
> The Court has concluded that Knox County is not responsible for Mr. Nichols's fall during his sleep. As a result, Mr. Nichols is not entitled to recover damages for the neck injury sustained in his fall.

These instructions adhere to the joint stipulation that led to the summary judgment and were not confusing, misleading, or prejudicial. Thus, nothing in the given instructions warrants reversal.

Similarly, the County objects to the court issuing this limiting instruction after some testimony by Nichols's treating physician: "I am going to remind the jury that the fracture itself was not the fault of Knox County. The issue that you will ultimately have to decide is were there—are there damages for pain and suffering, for mental anguish, and for loss of dignity during that 70-day delay." The County maintains the limiting instruction's second sentence erroneously allowed the jury to compensate for all of Nichols's pain and suffering during the seventy-day delay. But the County actually admitted liability for pain and suffering during that entire period and the court's instruction aligned with that confession.

## 2. Evidentiary Rulings

The County also takes issue with evidentiary rulings that thwarted its efforts to get the jury to make the "additional" damages distinction that the court refused to endorse in its instructions. For one, it appeals the exclusion of evidence regarding Nichols's pain before and after his neck surgery which, it argues, would have prompted a damages amount isolating the portion due for the neck injury itself. As the damages at trial related only to Nichols's incarceration preceding his surgery, the court properly ruled such evidence beyond the scope of the case. And the same sound discretion supported the court's rejection of the County's effort to present testimony about the pain Nichols experienced both between his diagnosis and surgery as well as after his release from custody. Such evidence would have been irrelevant to the issue before the jury.

## D. Res Judicata

A Tennessee state court dismissed Nichols's negligence claim. The County argues that res judicata thus bars his § 1983 action. Alternatively, it moves to certify two questions of law concerning res judicata to the Tennessee Supreme Court.

In considering whether the judgment of a state court will have a preclusive effect on a later action in federal court, courts give the prior adjudication the same preclusive effect accorded under state law. *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851–52 (6th Cir. 1997). Tennessee res judicata bars "a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). Two

9

suits are deemed the same cause of action when they arise "out of the same transaction or series of connected transactions." *Id.* at 382. The concept of a transaction "connotes a natural grouping or common nucleus of operative facts." *Id.* at 380 (quoting Restatement (Second) of Judgments § 24 cmt. b).

Because the operative facts in his state negligence action differ from those underlying his § 1983 claim, res judicata does not bar Nichols's civil rights action. His state court complaint centered on his housing at the Facility, not the failure to diagnose and treat his injury after the fall. That complaint states:

> This Defendant employs various individuals, including deputies and jailers, who are trained to appropriately house inmates in accordance with the laws, regulations and guidelines of the State of Tennessee. Plaintiff avers that employees of the Defendant were negligent in addressing his legitimate concerns of or concerning his confinement, and further, failed to take basic safety measures to prevent Plaintiff's fall, Plaintiff's injury from his fall, and appropriately adjust his housing afterward.

The Tennessee court addressed only whether the County could be negligent for Nichols's bunk assignment, something irrelevant to the later federal action. Thus, the Tennessee judgment has no preclusive effect here.

Because the County's res judicata argument clearly fails, we also deny the motion to certify questions to the Tennessee Supreme Court. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) ("When we see a reasonably clear and principled course, we will seek to follow it ourselves." (quoting *Pino v. United States,* 507 F.3d 1233, 1236 (10th Cir. 2007))).

## III.  CONCLUSION

For the reasons discussed, we affirm the judgment against Knox County.